UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
U.S. UNDERWRITERS INSURANCE          :
COMPANY,                             :
                                     :     **MEMORANDUM AND ORDER**
                        Plaintiff,   :     07-CV-1012 (DLI) (JMA)
                                     :
            -against-                :
                                     :
CHAYA TAUBER, individually and/or    :
CHAYA TAUBER d/b/a GAN SIMCHA, and   :
DAVID JACOBOWITZ, an infant, by his  :
father and natural guardian, YITZCHOK :
JACOBOWITZ, individually, and DAVID  :
HERSKOVITZ, GEMILAS CHESED OF        :
BES LEIVY V'SCHEINDEL, INC.          :
individually and/or d/b/a CONGREGATION :
GEMILAS CHESED,                      :
                                     :
                        Defendants.  :
-------------------------------------------------------- X

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff U.S Underwriters Insurance Company brought this action pursuant 28 U.S.C. § 2201(a) for a declaration that it has no duty to defend or indemnify defendants Chaya Tauber d/b/a Gan Simcha (the "Tauber Defendants") in a personal injury suit pending before the Supreme Court of the State of New York, Kings County.[1] The plaintiffs in that action are defendants Yitzchok Jacobowitz and David Jacobowitz (the "Jacobowitz Defendants"). Plaintiff has moved for summary judgment, arguing that it properly disclaimed coverage for the injury because neither the Tauber nor the Jacobowitz Defendants provided timely notice of the accident or of the personal injury suit as required by the policy. Additionally, plaintiff contends

---

[1] The underlying personal injury action bears the Index No. 19241/05 and is styled David Jacobowitz, an infant, by his father and natural guardian, Yitzchok Jacobowitz, and Yitzchok Jacobowitz, individually v. David Herskovits, Bemilas Chesed of Beis Leivy V'Scheindel, Inc. individually and/or d/b/a Congregation of Gemilas Chesed, Chaya Tauber, individually and/or d/b/a as Gan Simcha and Gam Simcha.

1

that the policy does not cover the injury at issue. The Jacobowitz Defendants have cross-moved for summary judgment, requesting the court to declare that the policy covers the injury. The Jacobowitz Defendants argue that: (1) they provided timely notice of occurrence; (2) they were not obligated to provide notice of the suit; (3) the policy covers the injury; and (4) plaintiff should be estopped from denying coverage. For the reasons set forth below, the court denies both motions in their entirety.

## BACKGROUND

On September 15, 2002, David Jacobowitz, a five-year-old infant, was injured while on the premises of the Gan Simcha day care center, which was owed and operated by defendant Chaya Tauber. In addition to being a day care center, Gan Simcha was also Chaya Tauber's residence. The day care center was not operating at the time of the injury, and David Jacobowitz was not enrolled at Gan Simcha. David Jacobowitz had been invited to the Taubers' apartment that day to play with the Tauber children.

While at the Tauber residence, David Jacobowitz broke his leg. The parties dispute how he was hurt. According to the Jacobowitz Defendants, while climbing the stairs in the Gan Simcha playroom, David Jacobowitz bumped his head against a wall-mounted shelf that ran along the side of the stairs. The impact caused David Jacobowitz to lose his balance, step on a toy on the stairs, and fall down the stairs, thus breaking his leg. Plaintiff contends that the wall-mounted shelf did not cause David Jacobowitz's injury. The shelf was used in the day care center's operations.

At the time of the accident, the Tauber Defendants held an insurance policy issued by plaintiff that covered "liability arising out of any negligent act, error or omission in rendering or failure to render professional services" relating to the "Day Care Center." (Foreman Aff. at Ex.

2

A.) That policy did not apply

> to the conduct of any business enterprise owned by you or which is controlled, operated or managed by you either individually or in a fiduciary capacity, including the ownership, maintenance or use of any property in connection therewith *other than in connection with the normal and usual professional services issued hereunder* . . . .

(*Id*.) (emphasis added). The policy required the insured to provide notice of an occurrence or suit "as soon as practicable." (*Id*.) Although Chaya Tauber was aware of the injury immediately after it occurred, she did not report it to plaintiff.

Six months after the injury, plaintiff learned of the incident through a letter, dated March 3, 2003, from the attorney for the Jacobowitzes advising that David Jacobowitz was "seriously injured due to [Chaya Tauber's] negligence while at [the Gan Simcha] premises." (*Id*. at Ex. C.) The letter was sent by certified mail to Chaya Tauber and plaintiff. Upon receipt, Chaya Tauber immediately forwarded the letter by facsimile to plaintiff, and shortly afterwards, on March 6, 2003, plaintiff received a paper copy of the letter. The letter did not indicate whether the accident occurred during Gan Simcha's business hours or whether David Jacobowitz was enrolled at Gan Simcha.

Within a few days of receiving the letter, plaintiff interviewed Chaya Tauber about the incident. On March 11, 2003, plaintiff hired an investigative company to explore the circumstances surrounding the incident. The investigative company provided a report of their findings to plaintiff on March 21, 2003. On March 31, 2003, plaintiff hired prior coverage counsel to provide them with a coverage opinion letter. On April 22, 2003, plaintiff received the coverage opinion, which concluded that the policy did not cover the incident. The next day, plaintiff sent a disclaimer letter to Chaya Tauber. In that letter, plaintiff asserted that the Tauber Defendants failed to provide timely notice of the injury, and the policy did not cover the

3

accident. That same day, plaintiff sent a letter to the Jacobowitz Defendants disclaiming coverage on the same grounds.

The Jacobowitz Defendants commenced a personal injury suit against the Tauber Defendants on June 15, 2005. Plaintiff did not learn of the suit until August 17, 2006, when it received a "Notice for Motion of Default Judgment" from the Jacobowitzes' attorney. That day, plaintiff issued a second disclaimer letter to Chaya Tauber and the Jacobowitzes claiming that they failed to provide timely notice of the lawsuit. (*Id*. at Ex. M.) On February 28, 2007, plaintiff filed the instant declaratory judgment action.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view all facts in the light most favorable to the non-moving party but "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)). In order to defeat a summary judgment motion, the non-movant carries only "a limited burden of production," but "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004) (internal citations omitted). Those specific facts must be more than "conclusory statements, conjecture, or speculation." *Opals on Ice*

*Lingerie v. Body Lines, Inc.*, 320 F.3d 362, 370 n.3 (2d Cir. 2003) (quoting *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)).

The Supreme Court has recently revised the summary judgment standard by requiring the court essentially to weigh the evidence presented by the non-moving party before allowing that evidence to be used to defeat a motion for summary judgment. Under the new standard, evidence presented by the non-moving party that is "blatantly contradicted by the record" should not be accepted by the court for purposes of defeating a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.     Coverage

The first issue addressed is whether the policy at issue covers the accident of September 15, 2002. Under New York law, an insurance policy must be interpreted so that a clear and unambiguous provision is given its plain and ordinary meaning. *Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006). Determining whether an ambiguity exists in an insurance policy is a question of law for the court to decide. *Id*. at 42-43. To negate coverage by virtue of an exclusion contained within the policy, "an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Cont. Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 652 (N.Y. 1993). When the meaning of a policy is in doubt or subject to more than one reasonable interpretation, "all ambiguity must be resolved in favor of the policy holder and against the company which issued the policy." *Kimmins Indus. Serv. v. Reliance Ins. Co.*, 19 F.3d 78, 81 (2d Cir. 1994).

The policy here covers "liability arising out of any negligent act, error or omission in rendering or failure to render professional services" relating to the "Day Care Center." (*See*

Foreman Aff. at Ex. A.)  The "Exclusions" section of the policy explains that the policy covers the "ownership, maintenance or use of any property . . . in connection with the normal and usual professional services" of the day care center.  (*Id.*)

Plaintiff contends that David Jacobowitz's injury does not fall within the scope of the policy because he was a social invitee of Chaya Tauber rather than an enrollee of the day care center.  Furthermore, the accident occurred outside of normal business hours, and the center was not operating at the time.  Unsurprisingly, the Jacobowitz Defendants have a broader view of what coverage entails.  According to them, coverage extends to all injuries that are caused by any equipment used in the normal and usual operation of the day care business, regardless of when the injury occurred or who was hurt.  In this instance, because the wall-mounted shelf was installed, used, and maintained for the business of the day care center, the Jacobowitz Defendants argue that the policy covers any injury that is caused by the wall-mounted shelf.  The court finds that the policy supports the Jacobowitz Defendants' interpretation.

The issue here is whether David Jacobowitz's injury "aris[es] out of . . . [the] ownership, maintenance or use of any property . . . in connection with the normal and usual professional services" of the day care center.  (Foreman Aff. at Ex. A.)  In the context of insurance policies, the New York State Court of Appeals has held that the phrase "arising out of" is "'ordinarily understood to mean originating from, incident to, or having connection with.'"  *Turner Constr. Co. v. Kemper Ins. Co.*, 198 Fed. Appx. 28, 29 (2d Cir. 2006) (quoting *Maroney v. New York Cent. Mut. Fire Ins. Co.*, 5 N.Y.3d 467, 472 (N.Y. 2005) (internal quotation marks omitted).  The phrase requires only that there be some "causal relationship between the injury and the risk for which coverage is provided."  *Id.* (internal quotation marks omitted).

If defendants are able to prove that the wall-mounted shelf caused David Jacobowitz's

injury, then they have also established some causal connection between the day care center's failure to properly maintain equipment used in the ordinary course of it's business—a negligent act in rendering professional services relating to the day care center—and the injury. Under such circumstances, the policy would apply. The cause of the injury, however, remains a disputed question of material fact that cannot be determined on summary judgment.

### III. Notice of Occurrence

The court now addresses whether the Jacobowitz and Tauber Defendants provided timely notice of occurrence to plaintiff under the policy. "Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy." *Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141, 143 (2d Cir. 1995). Thus, failure to timely notify an insurer of an occurrence can constitute a complete defense to a third-party complaint by the insured to compel the insurer to bear the costs of the defense in the underlying action. *State of New York v. Blank*, 27 F.3d 783, 793 (2d Cir. 1994). "An insured's failure to give timely notice to its insurer may be excused, however, by proof that the insured either lacked knowledge of the occurrence or had a reasonable belief of nonliability." *Sparacino*, 50 F.3d at 143. With respect to the first prong, the court examines the facts known to the insured during the relevant period and whether such facts would have alerted a reasonable person that there had been an occurrence or prompted a reasonable person to inquire as to whether there had been an occurrence. *See Utica Mut. Ins. v. Fireman's Fund Ins. Cos.*, 748 F.2d 118, 122 (2d Cir. 1984) (explaining that the objective reasonableness of an insured's failure to notify is evaluated "in light of the known facts and the insured's duty to inquire."). With respect to the second prong, a delay will be excused if the insured, in good faith, believed that the occurrence could not lead to liability that is covered under the policy. *Id.* This is

evaluated under an objective reasonableness standard. *Id.*

When a notice-of-occurrence provision requires the insured to notify the insurer "as soon as practicable" after an occurrence, the insured must provide notice within a reasonable time under all of the circumstances. *Security Mut. Ins. Co. v. Acker-Fitzsimons Corp., et. al.*, 31 N.Y.2d 436, 441 (N.Y. 1972). In the absence of mitigating factors, courts have found delays as short as ten days to be unreasonable as a matter of law. *State of New York v. Blank*, 27 F.3d 783, 796 (2d Cir. 1994) (collecting New York and Second Circuit cases finding 10-day, 29-day, and 53-day delays to be unreasonable). A finding of prejudice to the insurer resulting from an unreasonable delay is not required for an insurer to successfully assert this defense. *See Argo Corp. et. al. v. Greater New York Mut. Ins. Co.,* 4 N.Y.3d 332, 339 (N.Y. 2005); *AXA Marine & Aviation Ins. Ltd. v. Seajet Indus., Inc.*, 84 F.3d 622, 624 (2d Cir. 1996).

The issue of whether a delay is objectively reasonable is generally reserved for the fact finder at trial. *Argentina v. Otsego Mut. Fire Ins. Co.*, 655 N.E.2d 166, 167 (N.Y. 1995) (citations omitted); *Blank*, 27 F.3d at 795 (citations omitted). When no excuse is proffered or when there is no credible evidence to support the proffered excuse, an undue delay may render notice to the insurer untimely as a matter of law. *Blank*, 27 F. 3d at 795 (citations omitted).

The court finds that the Jacobowitz Defendants, in their own capacity, do not have a reasonable excuse for their six-month delay in providing notice. On the other hand, the court finds that the Jacobowitz Defendants can assert the Tauber Defendants' rights, and in that capacity, may have a sufficiently reasonable excuse for delay. That determination, however, is reserved for trial.

### A. The Jacobowitz Defendants

As the injured party, the Jacobowitz Defendants can prevent the insurer from disclaiming

coverage on the basis of the insured's failure to provide timely notice by notifying the insurer themselves. *Maldonado v. C.L.-M.I. Props., Inc.*, 39 A.D.3d 822, 823 (2d Dep't 2007) (citations omitted). To effectuate such notice, the injured party must "act[] diligently in attempting to ascertain the identity of the insurer, and thereafter expeditiously notif[y] the insurer." *Steinberg v. Hermitage Ins. Co.*, 26 A.D.3d 426 (2d Dep't 2006). When an injured party fails to exercise its independent right to notify an insurer of the occurrence, a disclaimer issued to an insured for failing to provide timely notice will be effective against the injured party as well. *Id.* (citation omitted).

In this instance, the Jacobowitz Defendants waited almost six months before notifying plaintiff of the injury. They offer two excuses, neither of which is reasonable. First, Yitzchok Jacobowitz, David Jacobowitz's father, claims that he "was afraid to make any claim against Chaya Tauber" for fear of losing his lease. (Yitzchok Jacobowitz Aff. at 2.) Yitzchok Jacobowitz believed that Chaya Tauber's father was a member of the Congregation Gemilas Chesed, which was the Jacobowitzes' landlord. (*Id.*) Even if true, this excuse is irrelevant. As explained above, delay in providing notice of occurrence can only be excused by lack of knowledge of the occurrence or a reasonable belief that the accident will not result in liability that is covered under the policy.

Second, the Jacobowitz Defendants ask the court to excuse their delay in light of David Jacobowitz's infancy. Infancy may sometimes be a factor in determining the reasonableness of an excuse for not notifying the insurance company. *Hovdestad v. Interboro Mut. Indemnity Ins. Co.*, 135 A.D.2d 783, 784 (2d Dep't 1987); *Virtuoso v. Aetna Cas. And Sur. Co.*, 134 A.D.2d 252, 253 (2d Dep't 1987). In this instance, however, the court finds that infancy should not be a factor because it did not contribute to the Jacobowitz Defendants' failure to provide timely notice.

The elder Jacobowitz knew of his son's injury immediately after it occurred, yet he did not try to determine whether Chaya Tauber had insurance to cover such an injury. Moreover, there is no evidence that Chaya Tauber would have withheld the information. Under these circumstances, the court finds that the Jacobowitz Defendants did not "act[] diligently in attempting to ascertain the identity of the insurer . . . ." *Steinberg*, 26 A.D.3d at 426.

### B. The Tauber Defendants

Under New York law, the Jacobowitz Defendants, as the injured party, can assert all of the rights of the insured when pursuing an insurance counterclaim directly against the insurer. *See D'Arata v. New York Central Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 665 (N.Y. 1990); *see also* (Pl.'s Reply Mem. at 4.). Plaintiff does not dispute this, but rather, insists that none of those rights are available because the Jacobowitz Defendants are bound by a default judgment entered by the court against the Tauber Defendants on September 19, 2007. This assertion is belied by the record. On March 31, 2008, the court terminated both the motion and entry of default judgment against the Tauber Defendants. The court noted that the default judgment was premature given that the question of whether the policy applies to the accident at issue was still being litigated between the insurer and the Jacobowitz Defendants in their pending summary judgment motion. Because the court vacated the default judgment, the Jacobowitz Defendants may "stand[] in the shoes" of the Tauber Defendants and raise all of the defenses that are available to the Tauber Defendants. *D'Arata*, 76 N.Y.2d at 665. Put differently, if the Jacobowitz Defendants establish that the Tauber Defendants had an objectively reasonable excuse for their delay in providing notice, plaintiff's disclaimer for failure to provide notice would be invalid.

Chaya Tauber's delay may have been reasonable because: (1) she was not a witness to

the accident; (2) the injury occurred while the day care center was not in operation; and (3) David Jacobowitz was not enrolled in the day care center. As such, she could have reasonably believed that the accident occurred not as a result of the dangerous arrangement of her day care center (an arguably covered risk), but rather because of her failure to properly supervise the children playing in her home (an arguably uncovered risk). A lay person, who is not familiar with the broad definition of "arising out of" under New York law, could have an objectively reasonable belief that the policy does not cover an accident under such circumstances. Indeed, plaintiff's attorneys, who are presumably more knowledgeable about the policy and New York insurance law than Chaya Tauber was, have argued that the policy cannot possibly cover the injury under these circumstances. If attorneys specializing in insurance law believe, albeit erroneously, that the accident cannot lead to liability under the policy and therefore would not require notice of occurrence to the insurer, certainly Chaya Tauber could have reasonably believed the same.

The court is unable, however, to makes such determinations as a matter of law given that there are still issues of material fact that remain unresolved. For example, the court does not know what Tauber actually knew about her policy from the time of the accident to when she provided notice to plaintiff. As such, this issue is reserved for trial.

## IV. Notice of Claim

Plaintiff's argument that the Tauber and Jacobowitz Defendants failed to provide timely notice of the lawsuit is meritless. By the time the Jacobowitz Defendants filed the lawsuit, plaintiff had already disclaimed coverage. As such, defendants had no obligation to provide notice. *See Moye v. Thomas*, 153 A.D.2d 673, 674 (2d Dep't 1989) (citation omitted).

## V. Disclaimer

The Jacobowitz Defendants advance two arguments as to why plaintiff's disclaimer of coverage is ineffective. First, the Jacobowitz Defendants contend that plaintiff's disclaimer letter "did not specify that its claim of late notice also applied to notice by the [Jacobowitz Defendants], so therefore that disclaimer letter was ineffective as against [their] notice of occurrence." (Casale Aff. at 7-8.) This argument is belied by the record. On April 23, 2003, plaintiff sent a letter addressed to the Jacobowitz Defendants' attorney disclaiming coverage on the grounds that the injury was not covered by the policy and for late notice of occurrence. (Foreman Aff. at Ex. J.)

Second, the Jacobowitz Defendants argue that the disclaimer is untimely because plaintiff waited 51 days after it learned of the accident before issuing a disclaimer. (Casale Aff. at 7.) "Under New York law, an insurer must notify an insured as soon as is reasonably possible of its intention to disclaim coverage for bodily injury under a policy." *U.S. Underwriters v. City Club Hotel, LLC*, 369 F.3d 102, 106-7 (2d Cir. 2004). An insurer's failure to provide notice "as soon as is reasonably possible after it first learns of the accident or of grounds for disclaimer of liability or denial of coverage, precludes effective disclaimer or denial." *Hartford Ins. Co. v. County of Nassau*, 46 N.Y.2d 1028, 1029 (N.Y. 1979). The reasonableness of an insurer's delay in providing notice is measured "from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage." *City Club Hotel*, 369 F.3d at 107 (citations omitted). "[W]here the grounds for disclaimer are not readily apparent, an insurer must be given reasonable time to adequately investigate a claim in order to determine whether it wishes to disclaim coverage, but the insurer also has an obligation to engage in a reasonably prompt, thorough, and diligent investigation of the claim." *Id*. The insurer carries the burden of showing the reasonableness of its delay. *Id*. Determining whether an insurer provided a

notice of disclaimer "as soon as reasonably possible is a question of fact which depends on all the facts and circumstances, especially the length of and the reason for the delay . . . ." *Id*. (internal quotation marks and citation omitted). Such determinations are normally left to the jury. *Id*. (citation omitted). New York courts have found that unexcused delays of 48 days and longer to be unreasonable as a matter of law. *Id*. (citations omitted).

Plaintiff argues that its 51-day delay in providing notice of disclaimer was reasonable because it was diligently investigating the incident throughout that period. Immediately after learning of the accident on March 3, 2003, plaintiff interviewed Chaya Tauber. On March 11, 2003, plaintiff hired an investigative company to explore the circumstances surrounding David Jacobowitz's injury. On March, 21 2003, the investigative company provided plaintiff with a report of its findings. According to plaintiff, that report raised issues as to whether the injury was covered under the policy. Therefore, on March 31, 2003, plaintiff hired attorneys to determine whether the policy covered the accident. On April 22, 2003, plaintiff received the coverage opinion letter, which concluded that the policy did not cover the incident. The next day, plaintiff disclaimed coverage.

The Jacobowitz Defendants contend that plaintiff did not need to conduct all of these investigative steps before disclaiming coverage. According to the Jacobowitz Defendants, as soon as plaintiff interviewed Chaya Tauber, it "had ascertained all relevant facts needed to determine whether or not late notice of occurrence was applicable." (Casale Aff. at 7.) As such, the Jacobowitz Defendants argue that plaintiff should have provided notice of disclaimer sometime in early March of 2003.

Viewing these facts in the light most favorable to plaintiff, the court cannot find that plaintiff's investigation, and therefore its delay in providing notice of disclaimer, was

13

unreasonable as a matter of law. Even if Chaya Tauber's interview provided all of the facts that plaintiff would eventually use to disclaim coverage, someone conducting a "reasonably thorough and diligent" investigation might seek to verify her statements or determine whether there are additional relevant facts. Moreover, once plaintiff gathered what it deemed to be all of the relevant facts, it is entirely reasonable for plaintiff to have its attorney analyze the facts and render an opinion as to coverage. Plaintiff took these steps in a timely fashion. As such, the court denies summary judgment on this claim.

## VI. Equitable Estoppel

The Jacobowitz Defendants argue that plaintiff should be estopped from denying coverage because

> the attorneys that [plaintiff] designated to represent Tauber in the personal injury action appear to have embarked on a concerted effort to steer liability in the personal injury action away from the strongest basis for David's argument that the injury arose from the operation of the day care business, namely, the dangerous wall shelf.

(Casale Aff. at 10.) According to the Jacobowitz Defendants, the sole purpose of this strategy was to help plaintiff disclaim coverage by directing liability away from the wall-mounted shelf, which is arguably covered under the policy, to Chaya Tauber's failure to properly supervise David Jacobowitz, which is most likely not covered under the policy. (*Id*. at 10-11.) The Jacobowitz Defendants allege that this so-called "concerted effort" is evidenced by the designated attorneys' litigation strategy consisting of: (1) "the unusual (in state court practice) procedure of deposing three treating doctors regarding how the accident occurred"; (2) "repeatedly [seeking] to demonstrate that there was no complaint either at the accident scene or in the emergency room . . . of an injury to David's head"; and (3) deposing Chaya Tauber's daughters about David Jacobowitz's injury. (*Id*. at 10-12.) The court finds nothing nefarious

about these inquires. David Jacobowitz alleges that while on the stairs of the Gan Simcha playroom, he bumped his head against a negligently mounted wall shelf. He claims that the impact caused him to lose his balance, then step on a toy on the steps, and fall down the stairs, which resulted in him breaking his leg. In light of these allegations, it is entirely proper for the attorneys defending the Tauber Defendants to explore the full extent of David Jacobowitz's injuries, including the severity of the impact that allegedly caused David Jacobowitz to fall down the stairs.

Moreover, it is well established that the counsel retained by an insurance company to represent an insured has an attorney-client relationship only with the insured, and owes its entire allegiance only to the insured. *See Feliberty v. Damon,* 72 N.Y.2d 112, 120 (N.Y. 1988) ("[T]he paramount interest independent counsel represents is that of the insured, not the insurer."). "The insurer is precluded from interference with counsel's independent professional judgments in the conduct of the litigation on behalf of its client . . . [and is] prohibited from itself conducting the litigation or controlling the decisions of the insured's lawyer." *Id.* Here, the Jacobowitz Defendants have not provided any evidence showing that plaintiff had any influence over the Tauber Defendants' litigation strategy in the personal injury action. The Jacobowitz Defendants also have not pointed to any evidence suggesting that the designated attorneys breached their ethical obligations to the Tauber Defendants by placing plaintiff's interest in disclaiming coverage over the Tauber Defendants' interest in escaping liability. As such, the Jacobowitz Defendants have failed to justify why estoppel should apply, particularly when all inferences are drawn in plaintiff's favor. Therefore, summary judgment is denied on this claim.

## CONCLUSION

For the reasons set forth above, the parties' motions for summary judgment are denied in

their entirety.

SO ORDERED

DATED: Brooklyn, New York
March 27, 2009

_____/s/_____
Dora L. Irizarry
United States District Judge